### UNITED STATES v. SCHROEDER.
#### No. 9391.

Circuit Court of Appeals, Seventh Circuit.
Dec. 5, 1947.

Giles F. Clark and M. Wesley Kuswa, both of Milwaukee, Wis., for appellant.

Timothy T. Cronin, U. S. Atty., and Leonard L. Bursten, Asst. U. S. Atty., both of Milwaukee, Wis., for appellee.

Before EVANS, KERNER, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

Henry Schroeder appeals from a $5,000 fine imposed by Judge Duffy, in a jury-waived case, for the violation of Priorities Regulation 33 (11 F.R. 601). The violation charged was the sale of a house for $10,000 when the maximum price fixed by the F.H.A. was $9,500.

The house was built by Schroeder Brothers Corp., of which the defendant was president, in 1946. The materials used were obtained through priorities assistance, (a part of the veteran housing program) and because of such priorities, a maximum price was fixed by F.H.A. At first it was planned that the house should be a frame one, and the price was fixed at $7,800. This was later raised to $8,600. Still later, the corporation filed an application to sell the house at $10,350, which was refused, but the maximum was raised to $9,500.

After the transaction was closed, upon which this criminal charge is based, there was filed an application for an increased maximum.

A young couple, Mr. and Mrs. Kroening, who had been living with her folks, and another family, in one house, were apparently desperate for a home of their own. They became interested in this house at 3957 N. 39th Street, Milwaukee, Wisconsin, which Schroeder Brothers Corp. was building. Its placard bore the original maximum price of $7,800. They conferred often with Mr. Schroeder concerning the purchase of it. He told them that there had already been expended in its erection slightly over $9,500 and he could not let the house go for less than $10,000. He expressed an intention to rent rather than sell for a lesser price.

On the 5th day of November, Mr. and Mrs. Kroening, with her father, arrived at the Schroeder office intent on making a purchase. They were not concerned as to how they accomplished their end. They

had visited the offices of the F.H.A. and later the O.P.A., and apparently told the officer in charge of the last named office that they could buy the place for $9,500 if they made a secret or a side payment of an additional sum of $500. The O.P.A. gave them $500 marked currency, and they went to Schroeder Brothers' office and promptly closed the deal and signed the papers.

The contract of sale, naming $9,500 as the purchase price with a $500 down payment, was signed and acknowledged. At the same time the Kroenings handed Schroeder a check (of their father-in-law's) for $500, and paid $500 in cash as a side payment, in accordance with their understanding. It was this $500 side payment which is the basis of this trouble.

The defendant took the stand in his own behalf. He explained his version of the $500 payment on the basis of the fact that the Kroenings wanted the house so desperately and wanted him to hold it for them— so he gave them the contract at the then permissible maximum of $9,500, with the understanding that the maximum price would be raised by the F.H.A. to $10,000 so as to give him a slight margin on the building.

He testified:

" * * * so, finally, we decided that if Mr. Kroening was willing to cooperate with me there we would reapply for an increase, but he was anxious to have this place and he always kept on saying, 'Well, how about holding it for me? How about having it? Mrs. Kroening was in quite often, and I told her I would keep it for her, but it seemed as though they wanted the actual agreement so they would know they would have it, they would know they had the right to purchase it, that I would hold it for them. So we finally—

"Q. Your agreement said 9500, though? A. $9500.00, but I intended to ask for another increase to get that up to 10,000 which I expected to get."

A reading of all the evidence leaves us clearly convinced that the trial judge not only had evidence to support his findings but said findings were soundly reached. Judge Duffy said in his Opinion:

"Here, prior to the OPA knowing anything about it, there is no question in my mind the evidence clearly discloses that Mr. Schroeder was of the mind to get $500.00 more than he had been authorized to obtain by the FHA for the sale of this house. I don't doubt that he sincerely felt that he was entitled to $10,000.00 in view of what it cost him, but that wasn't the question. That isn't what we are here trying. He was limited at that time to $9,-500.00. * * *

"Now, it is true, as Mr. Clark pointed out, that there is a provision that a builder can apply for an increase up to such time as the property is sold. There wasn't any increase pending at that time, and he had no right to charge any thing else except $9500.00. He did charge $10,000.00. He knew he wasn't doing right or he wouldn't have insisted upon the $500.00, in cash, being paid in addition to the $9500.00, called for.

"Mr. Schroeder on the stand—I admire him for that, at least —didn't attempt to perjure himself. He admitted; he said, 'Well, if they would cooperate with me'— he meant that $500.00 extra in cash—he said he would let them have the property."

The defendant's main reliance is upon his interpretation of Priorities Regulation 33. The Regulation in part provides

"Request for increases in sale prices and rents by builders. A builder may apply to the Federal Housing Administration for an increase in the sales price or rents specified in the application before the house is sold (*i. e., before title has passed*), or initially rented. * * *"

Defendant stresses the phrase "before title has passed." He contends that no final maximum can be considered as fixed until title has passed and until that time a seller could ask for revision and increase in the maximum and therefore defendant was acting legally when he made the contract of sale for $9,500 and accepted the $500 in addition. This $500 would belong to the builder only when the F.H.A. finally consented to raising the maximum.

This is not without plausibility. But the trial judge and we are of the opinion that

there was no thought of a conditional payment of the $500. The way it was received leaves us free of doubt that it was an illegal or unlawful payment in violation of the F.H.A. ruling, so intended by the payer and so received by the recipient. Our only doubt is as to which party was the greater or the more willing law breaker.

Moreover, we are convinced that the right to ask for an increased maximum price limitation expired when title passed, and title passed when the parties signed the contract November 5th. The builder could not execute a sale contract for an excessive price, and then later obtain an increase in the maximum price which would retroactively legalize a theretofore excessive price.

The judgment is affirmed.